THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN PULKO, Appellant, *v.* THOMAS H. MURPHY, as Warden of Clinton Prison, Dannemora, N. Y., Respondent.

Third Department, May 8, 1935.

*Jesse Perlmutter* [*Fred Baum* with him on the brief], for the appellant.

*John J. Bennett, Jr.,* Attorney-General [*Victor F. Boire, Assistant Attorney-General,* of counsel], for the respondent.

McNAMEE, J. The relator was indicted by the grand jury of Cayuga county in October, 1928, charged with the crime of escape

from Auburn Prison on the 8th day of June, 1928, to which prison he had been lawfully sentenced for felony on February 20, 1925, for a term of ten years, by the County Court of Onondaga county. The relator was arraigned in the County Court of Cayuga county under this indictment and pleaded not guilty. A jury was impaneled, the People swore five witnesses, and rested. No defense was offered in behalf of the relator; but a motion was made by his counsel to dismiss the indictment and to discharge the defendant from the accusation thereunder, and this motion was granted.

The district attorney thereafter moved that the case be recommitted to the grand jury for consideration, and an order to that effect was made.

In January, 1929, the relator was again indicted by the grand jury of Cayuga county, and was again charged with the crime of escape on June 8, 1928, from Auburn Prison, to which he had been sentenced for felony, and in which he was still lawfully confined.

The relator was again arraigned, and pleaded not guilty. And on February 11, 1929, a jury was impaneled, the People swore four witnesses, and rested. According to the clerk's minutes, no evidence was offered in behalf of the defendant, nor was any motion or request made in his behalf, except to poll the jury.

After the second trial for escape the district attorney filed an information under section 1943 of the Penal Law charging the relator with three former convictions for felony, one of which the defendant denied. Upon this issue a jury was impaneled and the People swore two witnesses. Again it appears that no evidence was offered, and no motion or request made in behalf of the defendant. The jury found that " the identity of the defendant had been established as set forth in the Information." Thereupon the court sentenced the relator to Auburn Prison for the term of his natural life. The foregoing facts appear from the record and are not the subject of dispute.

Defendant's ten-year term expired, and thereafter he brought this habeas corpus proceeding to regain his freedom, on the ground that the second trial for escape, the conviction thereupon, and the life sentence were illegal and void.

The record before us appears to contain the clerk's minutes of all the proceedings had before the court, but does not include the evidence. According to this record the relator was arraigned on the first indictment for escape on November 28, 1928, was convicted under the second indictment for escape on February 11, 1929, and was sentenced to life imprisonment on March 5, 1929. He was a laboring man, of a " common school " education, and without funds with which to employ counsel; and during that period the

court assigned to the defendant successively eight different lawyers as counsel. At three separate points in the record it appears that the defendant himself asked for changes of counsel; one of these requests was granted, and two were denied. The court indicated its doubt whether the relator was a mental defective, and suggested at the time of sentence an investigation of relator's mentality by the prison authorities pursuant to the Mental Hygiene Law.

The minutes disclose that during the first trial a motion was made to dismiss the indictment and discharge the defendant, and was denied; but at the close of the People's case the motion was renewed, and it was granted. And although he was twice tried thereafter, a second time for the escape, and once as a fourth offender, and sentenced to prison for life, the record does not indicate that any other motion, request, representation or proceeding of any character was made or taken in his behalf. The unusual number of counsel who were successively assigned, and relieved, in the short period of about three months during which this relatively simple case was before the court, and the absence from the minutes of any record of zeal or effort in the defense, or even of a motion in arrest of judgment, is a consideration which challenges attention, especially in view of the dire consequences.

It will be observed that both of these indictments were tried, and all of these proceedings were had, one following another in close succession, before a court at which the same judge presided throughout and the same district attorney prosecuted. Thus it may not be assumed that the court or the prosecutor was without notice or was unaware of all that occurred in these proceedings, and of the relation and significance of the various steps taken. We are persuaded that the second trial for escape was undertaken with full knowledge of the first, and with full knowledge of the proceedings therein.

Here we need not consider the refinements that may be urged in cases of mistrial directed by the court because of some compelling necessity, such as serious illness of the judge, or of a juror, or where it is made to appear that it is impossible for the jury to agree, or because of some other untoward condition beyond the control of the court. In the matter before us the first trial for escape was begun, a jury was impaneled and sworn, and the People presented their proof, and rested; and in the exercise of his right, the defendant's counsel made a motion for a dismissal of the indictment and a discharge of the defendant; and, as a ruling thereon, the court dismissed the indictment and discharged the defendant, and the proceedings on the trial came to an end. This was tantamount to a direction to acquit. That these proceedings constituted

a trial, and that the defendant was thereby placed in jeopardy within the meaning of the law, there can be no question. And if these things are true he may not be tried again, for " No person shall be subject to be twice put in jeopardy for the same offense." (State Const. art. 1, § 6; U. S. Const. 5th Amendt. 14th Amendt.; Wharton Crim. Law [12th ed.], §§ 395, 396; *People* v. *Barrett,* 2 Caines, 304, 308, 309; *People* v. *Goodwin,* 18 Johns. 187; *Cancemi* v. *People,* 18 N. Y. 128, 137, 139; *Ex parte Ulrich,* 42 Fed. 587, 594; *Ex parte Glenn,* 111 id. 257; *People* v. *Guidici,* 100 N. Y. 503, 508; *People ex rel. Battista* v. *Christian,* 249 id. 314; *People ex rel. Stabile* v. *Warden of City Prison,* 139 App. Div. 488, 492, 500; affd., 202 N. Y. 138; *People ex rel. Ticineto* v. *Brewster,* 241 App. Div. 467; *People* v. *Spitzer,* 148 Misc. 97.)

The offenses charged in the two indictments were not only the same in character, the same in legal effect, and to be supported by the same evidence, but they were identical, and were the same crime, and such appears from the merest reading of the indictments. Only one crime was alleged in each; and that was that the defendant unlawfully escaped on June 8, 1928, from a State prison where he was lawfully confined for felony. This was the act with which he was charged, and which constituted the crime. The felony for which he was confined, how long his term, and the number of previous convictions would not alter the crime charged, its character or degree. And variations in the allegations of the indictments in these particulars were immaterial. (Penal Law, §§ 1693, 1694.) In view of the facts shown by the record, the court had no jurisdiction to try the defendant a second time for the offense charged, and in doing so deprived him of his constitutional rights. The defendant's ignorance of his rights, or the poverty which prevented the employment of adequate counsel who would interpose his evident defense on the second trial for escape, or make the proper motion in arrest of judgment, could not give the court jurisdiction, nor would they constitute a waiver of his rights under the Constitution. The second trial for escape was contrary to the express provision of the Constitution and unwarranted, and the conviction and sentence were without force. Habeas corpus will lie in such circumstances. (*Nielsen, Petitioner,* 131 U. S. 176; *Ex parte Glenn, supra; People ex rel. Stabile* v. *Warden of City Prison, supra.*)

The order appealed from should be reversed, the writ sustained, and the prisoner discharged.

HILL, P. J., CRAPSER, BLISS and HEFFERNAN, JJ., concur.

Order reversed, writ sustained, and prisoner discharged.